UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:08CR698RWS(MLM) |
| | ) |
| TIMOTHY A. TROG, | ) |
| | ) |
| Defendant. | ) |

### ORDER AND REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Disclose Intent of Government to Use 404(b) Evidence [Doc. 91] and defendant's Motion to Suppress Statements [Doc. 90]. The government filed a written Response. [Doc. 92] An Evidentiary Hearing was held on May 4, 2009. The government presented the testimony of Detective Diane Leonard who has been a St. Louis County Police Officer for 19 years. Defendant did not present evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Det. Leonard testified that she is assigned to the St. Louis County Police Department's Multi-Jurisdictional Drug Task Force, specifically the Methamphetamine Unit. She investigates the manufacture of methamphetamine as well as pseudoephedrine and other methamphetamine precursors. She has been assigned to the Methamphetamine Unit for approximately one year. She has received extensive police training. In 2005 the Combat Methamphetamine Act was passed which limited to less than 9 grams the pseudoephedrine which may be purchased within any thirty day period. This Act has

assisted in tracking pseudoephedrine purchases. Officers of the Methamphetamine Unit obtained logs concerning pseudoephedrine purchases in connection with an investigation of defendant Timothy Trog for regularly exceeding the purchase limits of pseudoephedrine pills in violation of the Federal Combat Methamphetamine Act. From January, 2007 to June, 2008 defendant purchased over 400 grams of pseudoephedrine.

On July 15, 2008 Det. Leonard and Sergeant Tom Murley went to defendant's residence at 111 Birchwood Drive in Ballwin, Missouri. Neither Officer was in uniform at the time of their arrival at the residence. They knocked on the door and a 14-15 year old girl answered. They informed her that they were police officers and asked if Timothy Trog was there. Defendant came to the door and identified himself as Timothy Trog. The Officers identified themselves as police officers investigating his pseudoephedrine purchases. They told him he was not under arrest and asked if he would speak to them. Because the female adolescent was present they asked if he would be more comfortable if they spoke in the back yard. He was not handcuffed and no threats or promises were made to induce him to speak to them. They went through the house to the back yard. They discussed his "pill shopping" and told him that they had logs showing his multiple purchases. They asked him if he wanted to make a statement. Defendant responded that he was addicted to pseudoephedrine pills. Sgt. Murley told him that one cannot be addicted to pseudoephedrine pills. They asked him if he wished to cooperate and he said he didn't want to make any more statements.[1] In spite of the fact that the officers had probable cause

---

[1] This is the only statement about which testimony was adduced at the hearing. Neither on direct nor cross was further inquiry made. However, in the government's written Response (Doc. 92) it appears that the officers asked defendant about his girlfriend, co-defendant Josephine Tyczka and about the fact that he was related to co-defendant Scott Trog and Jeffrey Trog. Apparently the government does not intend to offer these statements at trial. They were neither inculpatory nor exculpatory but merely in the

to arrest defendant at the time of the interview, he was not arrested. The officers left the residence.

## CONCLUSIONS OF LAW

**1. Defendant's Motion to Suppress Statements**

When a person is in police custody and subject to interrogation, that person must be informed of his Constitutional right to remain silent. <u>Miranda v. Arizona</u>, 384 U.S. 436, 473 (1966).

Custody for purposes of <u>Miranda</u> warnings occurs either upon formal arrest or any other circumstances in which the suspect is deprived of his freedom of action in any significant way. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 429 (1984). The extent of the physical or psychological restraints placed on defendant must be examined in light of whether a "reasonable person in the suspect's position would have understood the situation" to be one of custody. <u>Berkemer</u>, 468 U.S. at 442. The determination of custody arises from an examination of the totality of the circumstances. <u>United States v. Carter</u>, 884 F.2d 368, 370 (8th Cir. 1989), <u>citing</u> <u>United States v. Lanier</u>, 838 F.2d 281, 285 (8th Cir. 1988) (<u>per curiam</u>).

The Eighth Circuit has set out certain indicia of custody which, while not exhaustive, are influential in the court's assessment of the totality of the circumstances:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police

---

nature of conversation.

> dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

The Griffin court characterizes the first three factors as "mitigating factors, that is to say the affirmative presence of one or more of these factors during questioning would tend to mitigate the existence of custody at the time of questioning." Id. On the other hand, "the remaining three factors may be characterized as coercive factors, which is to say that the affirmative presence of one or more of these factors during questioning would tend to aggravate the existence of custody." Id. The court has specifically directed that "it is not necessary to a finding of custody that all of the foregoing indicia be presented by the factual circumstances of a case (citation omitted) and a particularly strong showing with respect to one factor may compensate for a deficiency with respect to other factors." (citation omitted). Griffin, 922 F.2d at 1349.

The chief concern is with the accused's subjective believe that "his freedom of action is curtailed to a degree associated with formal arrest," Berkemer, 468 U.S. at 439, and whether that belief is objectively reasonable under the circumstances. Id.; Griffin, 922 F.2d at 1349.

In the present case, the defendant was told that speaking to the officers was voluntary. He was certainly free to leave his own residence or to ask the officers to do so. He was specifically told that he was not under arrest. He possessed unrestrained freedom of movement during the questioning. The officers asked him if he would be more comfortable speaking to them in the back yard because of the presence of the girl.. He voluntarily acquiesced to their request to respond to their questions and stopped answering when he wanted to. No strong arm tactics or deceptive stratagems were used during the

questioning. Both officers were in plain clothes thus minimizing the atmosphere of the questioning as police dominated. At the end of the interview defendant was not arrested and the officers left. See Griffin, 922 F.2d at 1349.

The undersigned finds that a reasonable person under the circumstances stated above would not believe that he was under arrest or that he was not free to leave. The facts show that the interview was not a custodial interrogation and that the statement made by defendant was voluntary. Because the statement was non-custodial, the Miranda warnings need not have been given. Berkemer v. McCarty, 468 U.S. 420 (1984); Beckwith v. United States, 425 U.S. 341 (1976). That the defendant may have been a suspect in this crime does not trigger any right on his part to be given the Miranda warnings. California v. Beheler, 463 U.S. 1121 (1983). Defendant's statements should not be suppressed.

2. **Motion to Disclose Intent of Government to Use 404(b) Evidence**

The government filed a Notice of Intent to Use 404(b) Evidence on March 11, 2009. The government informed defendant of the 404(b) Evidence it intended to use and has stated in its written Response that in accordance with Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 702, 703 and 705, it will provide reasonable notice in advance of trial of the general nature of any further 404(b) evidence it intends to introduce at trial. Because the 404(b) evidence was turned over to defendant prior to the filing of his Motion, the court will deny the Motion as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Disclose Intent of Government to Use 404(b) Evidence is **DENIED AS MOOT**. [Doc. 91]

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Statements be **DENIED**. [Doc. 90]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this   5th   day of May, 2009.